COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Petty and Senior Judge Bumgardner


CONSUELO SHALLCROSS

                                                        MEMORANDUM OPINION[*]
v.       Record No. 1861-06-2                                PER CURIAM
                                                         MARCH 13, 2007
HANOVER COUNTY DEPARTMENT
  OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF HANOVER COUNTY
                        Horace A. Revercomb, III, Judge

             (Steven M. Marks, on brief), for appellant.

             (Sterling E. Rives, III, County Attorney; Dennis A. Walter, Senior
             Assistant County Attorney; Russell E. Allen, Guardian *ad litem* for
             the minor child; Witmeyer & Allen, PLC, on brief), for appellee.


        On July 10, 2006, the trial court terminated the residual parental rights of Consuelo

Shallcross to her child, C.S., pursuant to Code § 16.1-283(B).  On appeal of this decision, Shallcross

challenges the sufficiency of the evidence to support the termination and contends the trial court

employed an improper standard in reaching its decision.  Upon reviewing the record and briefs of

the parties, we conclude this appeal is without merit.  Accordingly, we summarily affirm the

decision of the trial court.  See Rule 5A:27.

                                            I.

        On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Shallcross married C.S.'s father in 1995. Two sons, S.S. and C.S., were born of the marriage.[1] Shallcross abused alcohol while living with the father, who also used drugs daily. When S.S. was two years old, Shallcross lost custody of him due to her alcoholism and her destructive relationship with the father.[2]

In 2004, Shallcross was living in an apartment with C.S, who was then four years old. Wilbert Van Staden, Shallcross' neighbor, observed C.S. on occasion playing unsupervised in the parking lot of the apartment building. On the afternoon of June 25, 2004, C.S. went to Van Staden's home and asked for help. C.S. said he was unable to awaken his mother. When Van Staden went to Shallcross' home, he found her asleep on the couch.

At about 9:00 p.m. on June 25, 2004, the police went to Shallcross' home in response to a 911 "hangup" call. When Shallcross answered the door, she appeared intoxicated and smelled of alcohol. After a discussion regarding the possible involvement of the Hanover County Department of Social Services (DSS), Shallcross went inside and refused to answer the door. Police officers told Shallcross they wanted to ensure that her son was all right. Eventually, Shallcross permitted the police and a social worker to enter the home and view C.S., who was in pajamas and appeared to have just been awakened. When Shallcross stepped outside to smoke a cigarette, the police arrested her for being drunk in public. C.S. was taken into custody by DSS, and remained in foster care until the termination of Shallcross' parental rights.

---

[1] C.S. was born on October 6, 1999. The record does not reflect the birth date of S.S., but he is several years older than C.S.

[2] At the time Shallcross' parental rights to C.S. were terminated, the father was believed to be in California, and he had no involvement or contact with C.S. The father's parental rights to C.S. also were terminated.

When C.S. entered foster care, he had a severe case of head lice and had an infected earlobe. He reported to social workers that his mother "won't stop drinking." C.S. knew to call 911 if someone is "passed out." C.S. had witnessed violence between Shallcross and her boyfriend. C.S. also reported that he and Shallcross had searched for food in trash dumpsters outside fast food restaurants.

The initial foster care plan, which included a goal of returning home, required Shallcross to complete assessments for parenting and substance abuse and to follow the resulting treatment recommendations. Shallcross also was required to maintain stable employment and housing.

Frank Valentine, a substance abuse counselor, performed an assessment of Shallcross in September 2004. Shallcross met the criteria for alcohol dependence, and had an extensive history of alcohol abuse. Valentine recommended that Shallcross participate in intensive substance abuse treatment on an out-patient basis. Shallcross, however, failed to obtain such treatment.

Shallcross had a criminal history that included arrests for being drunk in public and driving while intoxicated. After C.S. entered foster care, Shallcross continued to engage in behavior resulting in criminal convictions and incarceration. On July 27, 2004, Shallcross was arrested upon charges of arson and conspiracy, and she remained incarcerated for four weeks. On January 11, 2005, Shallcross was convicted of the destruction of property and sentenced to twelve months in jail.

On March 26, 2005, Shallcross was arrested for committing assault and battery upon her father, Raymond Whittaker, with whom she had been living.[3] When the police stopped Shallcross' vehicle to arrest her, she smelled of alcohol, refused to cooperate with the officers,

---

[3] Shallcross and Whittaker had a history of violence between them. When Shallcross was young, Whittaker had blackened his daughter's eye.

and assaulted the officers. Upon conviction of charges resulting from the incident, Shallcross remained incarcerated until May of 2006.

In February 2005, the goal of C.S.'s foster care plan was changed to adoption. DSS advised Shallcross that it would be beneficial for her to receive in-patient treatment for her alcoholism and offered to pay for the treatment. She refused.

C.S. made progress while in his foster care placement in the home of Shallcross' cousin. Barbara Smith, a licensed clinical social worker, provided counseling for C.S. from August of 2004 to October of 2005. Initially, C.S. was overly anxious, exhibited oppositional behavior, and was having difficulty sleeping. C.S. progressed academically, socially, and behaviorally to the point that counseling was discontinued.

At the termination hearing in circuit court on July 10, 2006, Shallcross testified that she was an alcoholic, but had been sober since her incarceration in March of 2005.[4] After her release in May of 2006, Shallcross had resumed living with Whittaker, and she had obtained full-time employment. She was participating in a sixteen-week psychotherapy group. Shallcross stated that she had refused to enter an in-patient program because she had done so eleven years earlier, the treatment was unsuccessful, and she had resumed drinking afterward.

## II.

As a threshold matter, DSS contends the trial court erred in refusing to dismiss the case based upon a lack of jurisdiction. Specifically, DSS argues that Shallcross' notice of appeal from the juvenile court's decision to terminate her parental rights was defective because it failed to name Shallcross as the appellant or DSS as the appellee, both of whom were necessary parties to the action.

---

[4] Valentine opined that even if Shallcross had remained sober for this period, under the circumstances she was at great risk for relapse.

The notice of appeal was filed in writing using a pre-printed form. The notice referenced the date of the juvenile court's decision to terminate Shallcross' parental rights, as well as the case number of the juvenile court proceeding. The notice named Steve Marks, Shallcross' attorney, as the appellant. Beneath Marks' name and contact information was a blank indicating "Relationship to Child." In the blank was written, "Mother (Consuelo Shallcross)." C.S.'s name was inserted within the style of the case as it was to proceed in the circuit court. The name of C.S.'s guardian *ad litem* also was included in the notice of appeal.

"Rule 8:20 governs the procedure for appealing from a judgment of the juvenile court." Jones v. Div. of Child Support Enforcement, 19 Va. App. 184, 190, 450 S.E.2d 172, 176 (1994). Rule 8:20 provides: "All appeals shall be noted in writing. An appeal is noted only upon timely receipt in the clerk's office of the writing. An appeal may be noted by a party or by the attorney for such party." If the requirements of Rule 8:20 are not followed, the circuit court does not obtain jurisdiction over the matter and the case should be dismissed. See Jones, 19 Va. App. at 191, 450 S.E.2d at 176-77. "[T]he notice of appeal, when filed, effectively transfers jurisdiction from the juvenile court to the circuit court and places the named parties within the jurisdiction of the circuit court." Albert v. Ramirez, 45 Va. App. 799, 805, 613 S.E.2d 865, 867 (2005).

The notice of appeal filed by Shallcross' attorney complied with the requirements of Rule 8:20. It was timely filed, see Code § 16.1-296(A), in writing, and it identified the proceeding and order being appealed. Pursuant to Rule 8:20, it was permissible for the appeal to be noted by Shallcross' attorney. The notice referenced by name Shallcross, C.S., and his guardian *ad litem*. Because the notice of appeal was not defective for failing to comply with Rule 8:20, the trial court did not err in refusing to dismiss the matter for lack of jurisdiction.

III.

Shallcross contends the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(B). When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms, 46 Va. App. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Under Code § 16.1-283(B), the parental rights of parents of neglected or abused children may be terminated if the court finds by clear and convincing evidence that termination is in the best interests of the children and that:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Shallcross contends the evidence did not prove there had been neglect or abuse that presented a serious and substantial threat to the life, health or development of C.S. To the contrary, the evidence proved that on a regular basis before C.S.'s removal from Shallcross'

custody, she neglected his needs and left him unsupervised while she consumed alcohol. C.S. reported that his mother would not stop drinking and that she provided food for him from trash dumpsters. At the time of his removal, C.S. demonstrated physical and emotional signs of abuse and neglect.

Shallcross also contends the evidence was insufficient to meet the requirement contained in Code § 16.1-283(B)(2) that it was not reasonably likely the conditions resulting in the neglect or abuse could be substantially corrected or eliminated to allow C.S.'s safe return to her. However, prima facie evidence of this condition may be established by proof that

> [t]he parent . . . [has] habitually abused or [is] addicted to intoxicating liquors . . . to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning[.]

Code § 16.1-283(B)(2)(b).

Shallcross, an admitted alcoholic, made no effort to follow the treatment recommendations as DSS required. In fact, after C.S. entered foster care, Shallcross continued to drink and to engage in behavior resulting in criminal convictions. Shallcross was incarcerated for a significant portion of time while C.S. was in foster care. Shallcross' incarceration was "a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support [the] court's finding that the best interests of the child will be served by termination." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992). Thus, the facts and circumstances were sufficient to prove the condition contained in Code § 16.1-283(B)(2)(b).

Shallcross contends DSS did not provide services to facilitate the child's safe return to her after the juvenile court ordered termination. However, "[n]othing in Code § 16.1-283 or the larger statutory scheme requires that [rehabilitative] services be provided in all cases as a

- 7 -

prerequisite to termination under subsection B." Toms, 46 Va. App. at 268, 616 S.E.2d at 771. Subsection (B)(2) "does not create specific timeframes" within which rehabilitative services must be provided to a parent after the child enters foster care. Id. at 269, 616 S.E.2d at 771.

The evidence proved that DSS made available to Shallcross the services she needed to attain the goals of the initial foster care plan. Shallcross failed to take advantage of these services, and continued to engage in destructive behavior. Ultimately, Shallcross refused to obtain in-patient care for her substance abuse although DSS advised her to do so.[5]

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

---

[5] Shallcross also contends the trial court used an incorrect standard in determining that DSS had established the conditions required for a termination pursuant to Code § 16.1-283(B). Shallcross' argument amounts to nothing more than a challenge to the sufficiency of the evidence to support the termination. Having concluded the evidence was sufficient to prove the requirements of Code § 16.1-283(B)(1) and (2), we need not consider this question.

Although Shallcross claimed to have remained sober in the months preceding the termination hearing, "'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 184 (1990)). Following C.S.'s removal, Shallcross did nothing to halt her substance abuse until she was incarcerated for more than a year. Moreover, the circumstances indicated Shallcross was at a high risk for relapse. Therefore, the trial court did not err in concluding it was in the best interests of C.S. to terminate Shallcross' parental rights.

IV.

Because sufficient evidence supports the trial court's decision, we summarily affirm the termination of Shallcross' parental rights pursuant to Code § 16.1-283(B).

Affirmed.